UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:20-CR-00295-FDW-DCK

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| JOHNATHAN SHANE STAMPER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** is before the Court on Defendant's pro se Motion for Compassionate Release. (Doc. No. 65.) The United States responded (Doc. No. 69), Defendant timely replied (Doc. No. 70), and this matter is ripe for ruling. For the reasons set forth below, Defendant's Motion is **DENIED**.

## I. BACKGROUND

On January 3, 2020, a cooperating co-conspirator informed law enforcement of a scheduled drug sale between herself and Defendant. (Doc. No. 60, p. 6.) Later that afternoon, law enforcement executed a traffic stop of Defendant's vehicle where they seized approximately 230 grams of methamphetamine and located a nine-millimeter caliber firearm with nine rounds of ammunition in the vehicle's center console. (Id., p. 7.) In a post-Miranda interview, Defendant claimed ownership of the methamphetamine located inside the vehicle and admitted to drug trafficking methamphetamine. Id. Defendant also admitted being a convicted felon. Id.

On July 12, 2022, Defendant pled guilty to conspiracy to distribute and to possess with intent to distribute methamphetamine (actual), possession with intent to distribute methamphetamine (actual) (both in violation of 21 U.S.C. § 841(a)(1)) and pled guilty to possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). (Doc. No. 60.)

1

On December 15, 2022, the Court sentenced Defendant to 131 months imprisonment, five years of supervised release, and a $300 assessment. (Doc. No. 62, pp. 2–3, 5.)

In August 2023, Defendant submitted a request to the warden for Compassionate Release or reduction in his sentence. (Doc. No. 65-1, p. 17.) On September 12, 2023, the warden denied his request, (id.), and Defendant subsequently filed a pro se Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 65.) Currently, Defendant's projected release date is September 10, 2028. See https://www.bop.gov/inmateloc (last visited July 10, 2024).

## II. STANDARD OF REVIEW

Defendant's motion seeks a reduction in his sentence in this case under 18 U.S.C. § 3582(c)(1)(A). A defendant may seek a modification of his sentence from the court under § 3582(c)(1)(A) for "extraordinary and compelling reasons" if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." If a defendant has administratively exhausted a claim for release (or the Government does not contest the exhaustion requirement),[1] the district court generally conducts a two-step inquiry when deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A). United States v. Bond, 56 F.4th 381, 383 (4th Cir. 2023).

First, the court determines whether the defendant is eligible for a sentence reduction. "A defendant is eligible if the court finds 'extraordinary and compelling reasons warrant such a reduction,'" id. (quoting § 3582(c)(1)(A)), and the reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

---

[1] United States v. Muhammad, 16 F.4th 126, 130 (4th Cir. 2021) (recognizing the exhaustion requirement in § 3582(c)(1)(A) is not jurisdictional, and it may be waived or forfeited).

In 2023, the United States Sentencing Commission amended its policy statement to apply to defendant-filed motions for compassionate release, as permitted under the First Step Act of 2018, and expanded the list of circumstances sufficient to support such a motion under § 3582(c)(1)(A). See U.S. Sent'g Guidelines Manual § 1B1.13. The amendments became effective on November 1, 2023. Id. They supersede much of the case law that developed over the past several years while there was no policy statement applicable to defendant-filed motions. See United States v. McCoy, 981 F.3d 271, 283 (4th Cir. 2020). However, while drafting the new policy statement, the Sentencing Commission considered case law that developed after the enactment of the First Step Act in the absence of a binding policy statement. See U.S. Sent'g Guidelines Manual § 1B1.13 amend. 814 (Supp. to App. C 2023) (discussing Amendment 814 in light of the Supreme Court's decision in Concepcion v. United States, 597 U.S. 481 (2022)); United States v. Ingram, No. 3:10-CR-00069-FDW, 2024 WL 1056027, at *2 (W.D.N.C. Mar. 11, 2024), aff'd, No. 24-6274, 2024 WL 2828121 (4th Cir. June 4, 2024). The amended policy statement also set forth a list of specified "extraordinary and compelling reasons" that, considered either alone or in combination, may warrant a reduction in sentence, including:

> (1) the defendant's medical condition, including a terminal illness or serious medical or physical condition that substantially diminishes the defendant's ability to provide self-care or requires long-term or specialized medical care; (2) the defendant's age, if the defendant at least 65 years old, is experiencing a serious deterioration in physical or mental health, and has served at least 10 years or 75 percent of his or her term of imprisonment; (3) certain family circumstances, such as the death or incapacitation of the defendant's child, or where the defendant would be the only available caregiver for an incapacitated family member; (4) where the defendant was a victim of abuse while in custody; (5) any other reasons that are similar in gravity to the aforementioned reasons; and (6) in the event of an "unusually long sentence," the defendant has served at least 10 years of the term of imprisonment, and there has been a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) that would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed.

United States v. Medina, No. 1:16-CR-00051-MR-WCM-2, 2024 WL 2734958, at *1 (W.D.N.C. May 28, 2024) (citing U.S. Sent'g Guidelines § 1B1.13(b)(1)–(6)).

"Second, the court considers 'the factors set forth in section 3553(a) to the extent that they are applicable.'" Bond, 56 F.4th at 384 (quoting 18 U.S.C. § 3582(c)(1)(A)) (citing United States v. Kibble, 992 F.3d 326, 331(4th Cir. 2021)). Section 3553(a) requires the court to "impose a sentence sufficient, but not greater than necessary" to comply with the basic aims of the statute. In considering whether a reduced sentence is warranted given the applicable § 3553(a) factors, the court considers, among others: "the nature and circumstances of the offense;" "the history and characteristics of the defendant;" the need for the sentence to "provide just punishment," "afford adequate deterrence," "protect the public," and "provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner;" the kinds of sentences available and sentencing ranges; and "the need to avoid unwarranted sentence disparities." 18 U.S.C. § 3553(a). Notwithstanding the existence of "extraordinary and compelling reasons," the court retains the discretion to deny a defendant's motion after balancing the applicable 18 U.S.C. § 3553(a) factors. United States v. High, 997 F.3d 181, 186 (4th Cir. 2021) ("[I]f a court finds that a defendant has demonstrated extraordinary and compelling reasons, it is still not required to grant the defendant's motion for a sentence reduction.").

Defendant submitted a supplemental exhibit documenting the warden's denial of his motion for compassionate release (Doc. No. 65-1), and the Government does not contest that Defendant exhausted his administrative remedies, (Doc. No. 69). Thus, the Court's analysis turns to whether Defendant presents extraordinary and compelling reasons supporting his release and whether a sentence reduction is appropriate in light of the applicable § 3553(a) factors.

### III. ANALYSIS

Defendant argues the following constitute "extraordinary and compelling" reasons why the Court should grant his motion for compassionate release: (1) application of Part A of Amendment 821 to the U.S. Sentencing Guidelines to his case; (2) plain error by the Court at sentencing; (3) he is the only available caregiver for his mother who has health problems; (4) mitigating post-sentence circumstances of COVID-19; and (5) his rehabilitation and post-sentencing work. (Doc. No. 65, p. 8.)

**A. Ineligibility for Safety Valve Relief**

Defendant argues his criminal history score, if adjusted under Amendment 821, Part A, would result in his eligibility for safety valve relief under U.S.S.G. § 5C1.2, and thus, a lower sentencing guideline should retroactively apply to his sentence without regard to a statutory minimum sentence. Two of his counts carried a statutory minimum term of imprisonment of ten years (i.e., 120 months). (Doc. No. 60, p. 20). The Court calculated Defendant's guideline range based on a total offense level of 31 and a criminal history category of III, rendering the sentencing guideline imprisonment range 135 months to 165 months. (Id.) The Court ultimately sentenced Defendant to 131 months imprisonment. (Doc. No. 62, p. 2.)

> Section 5C1.2 of the U.S. Sentencing Guidelines states, in relevant part:
>
> In order for a defendant to be sentenced without regard to a statutory minimum sentence, the court must find that the defendant meets the criteria in 18 U.S.C. § 3553(f)(1)–(5) as follows: (1) that the defendant does not have—(A) more than four criminal history points, excluding any criminal history points resulting from a one point offense, as determined under the sentencing guidelines; (B) a prior three point offense, as determined under the sentencing guidelines; and (C) a prior two point violent offense, as determined under the sentencing guidelines; (2) *the defendant did not . . . possess a firearm* or other dangerous weapon in connection with the offense.

U.S.S.G. § 5C1.2(a)(1)–(2) (emphasis added).

Defendant relies heavily on United States v. Bailey[2] in arguing he qualifies for a sentence reduction because he does not have all of the factors set forth under § 5C1.2(a)(1) and thus, meets the criteria to be sentenced without regard to a mandatory minimum sentence. The Court finds this argument is moot because Defendant does not meet the criteria under § 5C1.2(a)(2) as he did possess a firearm in connection with the instant offense. Section 5C1.2(a) makes clear a defendant must meet subsections 1–5 to be eligible for the limitation on a statutory minimum sentence.

Amendment 821, Part A, changed part of chapter four of the Sentencing Guidelines related to a defendant's criminal history. See U.S. Sent'g Guidelines Amend. 821. The amendment strikes the two status points previously added under 4A1.1(d) for defendants who committed their offense while under any criminal justice sentence; now, defendants who commit an offense while under a criminal justice sentence earn only one status point, and only if they earn seven or more points based on their overall criminal history. U.S. Sent'g Guidelines § 1B1.10(d).

Here, the U.S. Probation Office prepared a Presentence Investigation Report on Defendant and calculated his criminal history as a category III. (Doc. No. 60, p. 14.) Based on his criminal history he was assessed four points under U.S. Sent'g Guidelines § 4A1.1(c). He was then attributed two additional criminal history points for committing the instant offense while under a criminal justice sentence, rendering his total criminal history score as six. Without those two points, Defendant's criminal history score would be four, and thus, remains a category III. U.S. Sent'g Guidelines § Ch. 5 Part A. Without a change in category, Defendant's sentencing guideline

---

[2] Bailey, No. CV519CR00043KDBDCK, 2023 WL 6883649 (W.D.N.C. Oct. 18, 2023), primarily relies on Fourth Circuit caselaw, United States v. Jones, 60 F.4th 230 (4th Cir. 2023), as authority supporting the Court's decision to vary below the mandatory minimum. Jones has since been abrogated by the Supreme Court in Pulsifer v. United States, 601 U.S. 124 (2024) (holding "a defendant facing a mandatory minimum sentence is eligible for safety-valve relief under 18 U.S.C. § 3553(f)(1) only if he satisfies each of the provision's three conditions—or said more specifically, only if he does not have more than four criminal-history points, does not have a prior three-point offense, and does not have a prior two-point violent offense").

remains unchanged. "A reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2) if . . . [a]n amendment listed in subsection (d) does not have the effect of lowering the defendant's applicable guideline range." U.S. Sent'g Guidelines § 1B1.10(a)(2)(B).

Therefore, without a change in his applicable guideline range after applying Part A of Amendment 821, Defendant is ineligible for a sentence reduction.

### B. Improper Sentencing Guideline Calculation

Defendant challenges the validity of his sentence by arguing he should have been sentenced using a different calculation of drug weight, (i.e., methamphetamine mixture instead of methamphetamine actual), because the distinction provides no indication of a defendant's criminal role as "most methamphetamine confiscated today is pure." United States v. Robinson, No. 3:21-CR-14-CWR-FKB-2, 2022 WL 17904534, at *3 (S.D. Miss. Dec. 23, 2022).

At the outset, the Court notes challenging a sentence, or the way in which a sentence was determined, is not an extraordinary and compelling circumstance supporting a motion for compassionate release. The Fourth Circuit held in Ferguson, "[b]ecause [18 U.S.C.] § 2255 is the exclusive method of collaterally attacking a federal conviction or sentence, a criminal defendant is foreclosed from the use of another mechanism, such as a motion for compassionate release, to sidestep Section 2255's requirements." United States v. Ferguson, 55 F.4th 262, 270 (4th Cir. 2022); see also United States v. Hawkinson, No. 3:18-CR-259, 2024 WL 1471544, at *3 (W.D.N.C. Apr. 4, 2024). More explicitly, "a compassionate release motion cannot be used to challenge the validity of a defendant's conviction or sentence." Ferguson, 55 F.4th at 266. Additionally, the Court notes "[w]hile the Fourth Circuit has not explicitly stated that the 10:1 disparity [in methamphetamine actual versus methamphetamine mixture] is constitutional, it has

7

affirmed the constitutionality of [21 U.S.C.] § 841." Hatcher v. United States, No. 520CR00032KDBSCR1, 2024 WL 666497, at *3 (W.D.N.C. Feb. 16, 2024) (citing United States v. Mason, 82 Fed. App'x 310, 313 (4th Cir. 2003)).

In support of his sentencing argument pertaining to his plain error assertion, Defendant cites only two cases, Robinson, No. 3:21-CR-14-CWR-FKB-2, 2022 WL 17904534 and Bailey, No. CV519CR00043KDBDCK, 2023 WL 6883649. (Doc. No. 65.) Defendant's reliance on Bailey and Robinson does not change the Court's conclusion that his argument is improper. The Court addresses them to show how they are inapplicable to Defendant's case and to show how Defendant's argument fails on the merits.

First, the instant case is distinguishable from the defendant in Bailey. The Court in Bailey found that defendant to be eligible for safety valve relief given Fourth Circuit authority binding on the Court at the time. The Bailey Court stated, "[U]nder recent Fourth Circuit authority, [defendant] would be eligible for the benefits of the 'safety valve,' allowing the Court to sentence him below the otherwise 'mandatory' minimum sentence." Bailey, No. CV519CR00043KDBDCK, 2023 WL 6883649, at *2. The Court also relied on that defendant's individual circumstances on reducing his weapons enhancement points because that defendant had only handed a gun, belonging to someone else, to his co-defendant. Id. at n.3. Per the Court's discussion above on Defendant's safety valve relief eligibility and based on Defendant's individual circumstances, Bailey is not relevant to Defendant's case.

Second, the instant case is procedurally distinguishable from Robinson. The order by the Robinson court was in response to objections raised *during* that defendant's sentencing hearing. That court allowed for supplemental briefing to make its decision to deviate from the sentencing guidelines based on defendant's policy argument regarding the U.S. Sentencing Guidelines on

methamphetamine purity. This is procedurally distinguishable from the instant case because Robinson considered the policy argument during sentencing, while here, Defendant aims to make the same policy argument, but instead, on a motion for compassionate release as an "extraordinary and compelling reason." Additionally, the Court followed the appropriate sentencing procedures. The Court first established the applicable guideline range as 135 months to 165 months based on the total offense level and criminal history category. (Doc. No. 60, p. 20.) Then, the Court considered the arguments presented at sentencing along with the applicable § 3553(a) factors. The Court then varied *below* the sentencing guidelines by imposing a sentence of 131 months. The downward variance indicates the Court's consideration of the circumstances of Defendant's individual case during sentencing.

This argument is barred here under Ferguson and, as the Court has explained, Defendant's argument fails on the merits. Additionally, the challenge to his sentence brought by Defendant is barred by his own plea agreement.[3] (Doc. No. 49, p. 5.) Therefore, Defendant cannot circumvent his plea agreement or the requirements of 28 U.S.C. § 2255 through a motion for compassionate release.

**C. Health Issues of Defendant's Mother**

Defendant asserts his mother, Linda Price Stamper, is incapacitated, and he is the only available caregiver for her, and this constitutes an extraordinary and compelling circumstance justifying compassionate release. Courts may grant compassionate release based on family circumstances where a defendant is the only available caregiver for an incapacitated parent. U.S. Sent'g Guidelines Manual § 1B1.13(b)(3)(C). See United States v. Burrough, No. 3:04-CR-00191-FDW, 2022 WL 2318512 (W.D.N.C. June 28, 2022), reconsideration denied, No. 3:04-CR-

---

[3] In exchange for the concessions made by the United States in the plea agreement, Defendant waived all rights to contest his conviction and sentence in any appeal or post-conviction action.

00191-FDW, 2023 WL 4534919 (W.D.N.C. July 13, 2023); see also United States v. Landry, No. 2:16CR171 (RCY), 2021 WL 5493497 (E.D. Va. Nov. 22, 2021), aff'd No. 21-7657, 2023 WL 1794154 (4th Cir. Feb. 7, 2023).

The record before the Court does not demonstrate Defendant is the only available caregiver for his mother. Defendant states his mother lives alone and has hearing loss, vision loss, stints in her heart, and is suffering from the beginning stages of Alzheimer's. She also has history of falls. His mother wrote a letter corroborating her health issues and states Defendant "could be a great help" to her if released. (Doc. No. 65-1, p. 10.) The Court acknowledges the letters corroborating that Defendant's mother would benefit greatly from Defendant's presence. (Doc. No. 65-1, pp. 11, 12–13, 16). While the Court does not deny his mother's health concerns as legitimate, and empathizes with her difficulties, Defendant does not provide additional verifiable medical documentation establishing his mother is incapacitated and in need of a full-time caregiver. Additionally, while his mother's conditions may worsen and eventually need full-time care, she currently is not incapable of caring for herself. The Court notes Defendant has two adult children and a maternal brother who lives within 50 miles of Defendant's mother (Doc. No. 60, p. 17), but fails to provide evidence they are not available caregivers. Because Defendant failed to submit any evidence showing why no other party could serve as his mother's caregiver, he is unable to show he is the *only* possible caregiver for her. See U.S. Sent'g Guidelines Manual § 1B1.13 amend. 814 (Supp. to App. C p. 207) (stating that relief is available only where "defendant establishes both the qualifying relationship and defendant is the only available caregiver"); see also United States v. Richardson, No. 5:18-CR-507-LFL, 2020 WL 2200853, at *2 (E.D.N.C. May 6, 2020) ("The court declines to grant compassionate release in the absence of a robust evidentiary showing that defendant is the only available caregiver."). The Court does not assume these other

family members are able to care for Defendant's mother, but Defendant has the burden of providing evidence as to why those relatives cannot assist Defendant's mother. Overall, the circumstances presented do not amount to a "truly exceptional case" justifying release. See McCoy, 981 F.3d at 287–88 (where the Court explains § 3582(c)(1)(A)(i) is used for the truly exceptional cases that do not fall within another statutory category); see also United States v. Broome, No. 3:19-CR-384-MOC, 2022 WL 893110, at *4 (W.D.N.C. Mar. 25, 2022) (explaining that defendant's mother and father's medical conditions are not uncommon, nor did defendant show the conditions were incapacitating, and therefore, not a "truly exceptional case" justifying release.).

Accordingly, Defendant has failed to show this is an "extraordinary and compelling" reason justifying compassionate release.

### D. COVID-19

The policy statement now in effect authorizes the Court to find "extraordinary and compelling" reasons support release where a defendant is housed at a correctional facility "affected or at imminent risk of being affected by an ongoing outbreak of infectious disease" or public health emergency as declared by the appropriate authorities, personal health risk factors increase the defendant's "risk of suffering severe medical complications or death" as a result of the disease or public health crisis, and that risk "cannot be adequately mitigated in a timely manner." U.S. Sent'g Guidelines Manual § 1B1.13(b)(1)(D). In May 2023, the federal government ended the national state of emergency to respond to COVID-19.[4] Therefore, § 1B1.13(b)(1)(D) supports Defendant's argument only if he can show he is housed at a correctional facility "affected or at imminent risk

---

[4] National Emergencies Act, Pub. L. No. 118-3, 137 Stat. 6 (2023).

of being affected by an ongoing outbreak of infectious disease" to which he is particularly susceptible.

Defendant does not argue or show a particularized susceptibility or risk of contracting COVID-19. Therefore, the Court is unable to assess whether "[the] inmate shows both a particularized susceptibility to COVID-19 and a particularized risk of contracting the disease at his prison facility" because Defendant does not provide the relevant information. United States v. Brown, 78 F.4th 122, 128 (4th Cir. 2023) (quoting United States v. Hargrove, 30 F.4th 189, 196 (4th Cir. 2022)).

Defendant cites to the United States District Court of the Southern District of New York in United States v. Reiter to argue that courts regard COVID-19 as an extraordinary and compelling reason for compassionate release or sentence reduction. No. 87-CR-132 (VSB), 2021 WL 1424332 (S.D.N.Y. Apr. 15, 2021). At the outset, the Court would like to note Reiter is not binding on this Court. Nonetheless, the Court will address it.

Defendant's case is distinguishable from Reiter because in that case the defendant was "a 73-year-old with underlying health conditions" and was sentenced in 1988, prior to the COVID-19 outbreak, which resulted in a more severe sentence "exceed[ing] what the [c]ourt anticipated at the time of sentencing." Id. at *8. Here, Defendant was sentenced on December 15, 2022, well after the start of the COVID-19 pandemic in early 2020. (Doc. No. 62, p. 1.) Defendant is 52 years old and has not presented any medical records indicating he has underlying health conditions placing him at risk of medical complications or death shall he contract COVID-19. Additionally, the Court has no evidence of Defendant's vaccine status.

Defendant's only argument in regard to the effects of COVID-19 is he has had no visitation since 2020 because of the implementation of lockdowns. Defendant points to no affirmative

caselaw that shows this is considered an "extraordinary and compelling reason." On April 10, 2023, COVID-19 was no longer considered a public national health emergency,[5] which was prior to the date Defendant filed his motion on December 18, 2023. Currently, Defendant is being held at federal correctional complex Butner (FCC Butner) in eastern North Carolina. See https://www.bop.gov/inmateloc (last visited July 10, 2024). Defendant is not housed at a correctional facility "affected or at imminent risk of being affected" by an ongoing COVID-19 outbreak. FCC Butner currently reports zero active cases of COVID-19, and approximately sixty-six percent of the inmate population is fully vaccinated against the COVID-19 virus. See https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last visited July 10, 2024). BOP has taken measures to prevent the spread of COVID-19 through the availability of vaccinations to inmates. Further, FCC Butner allows visitation, and the required procedures are set forth on their website. See https://www.bop.gov/locations/institutions/but/ (last visited July 10, 2024). Defendant is currently allowed visitors and there are no lockdowns preventing visitation.

On this record, Defendant's argument to COVID-19 does not present "an extraordinary and compelling reason."

### E. Rehabilitation and Post-Sentencing Work

Defendant argues his rehabilitation, post-sentencing work in prison, and his stable reentry plan show his willingness to follow and respect the law.

The Court notes "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason [for sentence reduction]." 28 U.S.C. § 994(t). The Court recognizes "it may consider rehabilitation and other post-conviction conduct, when paired with

---

[5] National Emergencies Act, Pub. L. No. 118-3, 137 Stat. 6 (2023).

other factors, as an 'extraordinary and compelling reason[]' for relief." United States v. Davis, 581 F. Supp. 3d 759, 771 (E.D. Va. 2022) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)); see also Davis, 2022 WL 127900, at *1 ("successful rehabilitation efforts can be considered as 'one among other factors'") (quoting McCoy, 981 F.3d at 286 n.9)). "[D]efendants can overcome [the] presumption [that the district court sufficiently considered relevant factors] by presenting evidence of rehabilitation that was not available at their original sentencing hearing." United States v. Davis, 99 F.4th 647, 658 (4th Cir. 2024) (citing United States v. Martin, 916 F.3d 389, 396 (4th Cir. 2019)).

Here, the Court acknowledges Defendant has made the following commendable efforts while in prison. Defendant has completed drug abuse treatment courses, completed a softball officiating course, and received positive work evaluations. (Doc. No. 60, pp. 27–8; Doc. No. 65-1, pp. 5–8). Defendant has had no disciplinary reports or infractions. (Doc. No. 65-1, p. 1.) Defendant has strengthened his community ties and familial relationships as evidenced by the letters of support received on his behalf. (Doc. No. 65-1, pp. 10–13, 16; Doc. No. 67, pp. 2–3.) Additionally, it is noted Defendant has satisfied his financial responsibilities assessed at sentencing. (Doc. No. 65-1, p. 14.) However, Defendant's rehabilitation efforts and post-sentencing conduct are not enough on their own to warrant release when paired with the other factors presented here. The Court acknowledges Defendant's efforts, but while Defendant's conduct is certainly commendable, it does not constitute an "extraordinary and compelling" reason for compassionate release.

The Court finds Defendant has not established an "extraordinary and compelling reason" for a sentence reduction under § 3582(c)(A)(1)(l). Nonetheless, the Court will consider the § 3553 factors as part of its analysis. See § 3582(c)(1)(A).

### F. Section 3553(a) Sentencing Factors

The Court continues to find the relevant § 3553(a) factors ultimately weigh in favor of continued incarceration.

This Court "must consider the following relevant § 3553(a) factors as they pertain to the defendant: 'the nature and circumstances of the offense'; 'the history and characteristics of the defendant'; 'the need to avoid unwarranted sentence disparities'; and the need for the sentence imposed to 'provide just punishment,' 'afford adequate deterrence,' 'protect the public,' and 'provide the defendant with ... training, medical care, or other correctional treatment in the most effective manner.'" United States v. Malone, 57 F.4th 167, 176 (4th Cir. 2023) (quoting 18 U.S.C. § 3553(a)).

Here, Defendant committed the serious offenses of possessing with intent to distribute methamphetamine and possessing a firearm as a convicted felon. As these are serious offenses, they carried significant sentences. Defendant's criminal history category is III and he committed the instant offenses while under a criminal justice sentence. (Doc. No. 60, p. 14.) The risk of recidivism is high for Defendant given his criminal history. Defendant carried with him a loaded firearm while engaging in drug trafficking which contributes to a dangerous environment. The sentence was imposed below the guideline and near the mandatory minimum for the serious offenses involved, which provides for just punishment and need to protect the public from further crimes.

The Court weighs these factors and finds for Defendant's continued incarceration. Additionally, as stated earlier, the threshold requirements for compassionate release were not met.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion for Compassionate Release, (Doc. No. 65) is **DENIED**.

**IT IS SO ORDERED.**

Signed: July 23, 2024

Frank D. Whitney
United States District Judge